

10 CV 6889

PREET BHARARA
United States Attorney for the
Southern District of New York
BY: JEFFREY ALBERTS
300 Quarropas Street, Third Floor
White Plains, NY 10601
(914) 993-1965

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

          Plaintiff,

   - v. -

$733,804.92 IN UNITED STATES CURRENCY
FUNDS CURRENTLY ON DEPOSIT AT
GOLDWATER BANK, N.A. IN SCOTTSDALE,
ARIZONA, IN ACCOUNT NUMBER 160270,

          Defendant *in rem*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**VERIFIED COMPLAINT**

10 Civ.



    Plaintiff United States of America, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, for its complaint alleges as follows:

### I. NATURE OF THE ACTION

    1. In this action the United States of America seeks forfeiture of $733,804.92 in United States currency currently on deposit at Goldwater Bank, N.A. in Scottsdale, Arizona, in account number 160270 (the "Defendant Funds" or "Defendant *in rem*").

    2. The Defendant Funds are subject to forfeiture (a) under Title 18, United States Code, Sections 981(a)(1)(A) and 984 as property involved in actual or attempted money laundering transactions in violation of Title 18, United States Code, Section 1956(a)(2)(A), or as property traceable to such property, (b) under Title 18, United States Code, Sections 981(a)(1)(C)

and 984 as property that constitutes or is derived from proceeds traceable to the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955 and the illegal transmission of gambling information, in violation of Title 18, United States Code, Section 1084, or as property traceable to such property, and (c) under Title 18, United States Code, Section 1955(d), as property used in violation of Title 18, United States Code, Section 1955(a), or as property traceable to such property.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to Title 28, United States Code, Section 1355(b) because some of the actions giving rise to forfeiture took place in the Southern District of New York.

4. The Defendant Funds have not been seized but are within the *in rem* jurisdiction of the Court. The United States does not request authority from the Court to seize any of the Defendant Funds at this time.

## III. STATEMENT OF FACTS

5. This action arises out of an investigation of illegal internet gambling businesses which, although typically based offshore, predominantly serve players based in the United States. These gambling businesses offer "real money" casino games, poker, and sports betting to United States players, in violation of multiple federal criminal statutes, including but not limited to 18 U.S.C. § 1084 (making it unlawful to use a wire in connection with placing a bet or wager), § 1955 (making it illegal to operate an illegal gambling business) and §§ 1956 and 1957 (money laundering).

2

6. Although illegal internet gambling companies typically keep their computer servers, management, and support staff offshore, they must rely on the United States financial system both to obtain money from gamblers and to pay those gamblers who wish to withdraw funds from the online gambling companies. However, because United States financial institutions generally refuse to handle financial transactions that they know to be related to internet gambling, the offshore internet gambling companies and the payment processors who serve them must, as a matter of course, make false representations to United States financial institutions in order to conduct these transactions.

7. The leading internet gambling companies hire processing companies who have the ability to withdraw funds directly from United States consumers' bank accounts through a process known as the Automated Clearinghouse (or "ACH") system. The ACH system, which is administered by the Federal Reserve, allows for fast and efficient electronic funds transfers to and from individuals' checking accounts through "e-checks" or "electronic checks." Payment processing companies with access to the ACH system can take money from individual consumer bank accounts (*i.e.* debit the consumer account) and route it to gambling companies and transfer money from the gambling companies into individual checking accounts to pay winnings (*i.e.* credit the consumer account). Typically, a gambler simply logs onto the web site of an internet gambling company and chooses "e-check" or some similarly described option and enters his or her United States bank account information to complete these transactions. The gambling companies often rely on these payment processors with access to the ACH system because major credit card companies make it difficult for United States residents to fund gambling transactions with credit cards.

8. Between January 2009 and May 2009, funds constituting proceeds of operating an illegal gambling business and the illegal transmission of gambling information were deposited into account number ▮0201, held in the name of Allied Wallet, Inc. ("Goldwater Account-1") in an amount greater than the value of the Defendant Funds. These funds are traceable to Pokerstars, an online gambling company based in the Isle of Man, and other offshore online gambling companies. They include proceeds of the illegal transmission of gambling information and operating an illegal gambling business. Some of these funds are traceable to wire transfers from outside the United States. These transfers were made by individuals and entities who knew that (a) the funds involved represented the proceeds of the illegal transmission of gambling information and operating an illegal gambling business, (b) the transfers were made in order to promote the carrying on of an illegal gambling business and (c) the transfers were designed in part to conceal or disguise the nature, location, source, ownership and control of the proceeds of the illegal transmission of gambling information and operating an illegal gambling business.

9. During this same time period, funds in an amount greater than the value of the Defendant Funds were debited from the bank accounts of online gamblers who were using the Pokerstars.com website, and other websites, to engage in online gambling and then credited into Goldwater Account-1. Some of the debited accounts were located in the Southern District of New York. These transfers, executed through the ACH system, represented payments to engage in online gambling.

10. During this same time period, funds in an amount greater than the value of the Defendant Funds were debited from Goldwater Account-1 and then credited to the bank accounts of online gamblers who were using the Pokerstars.com website, and other websites, to engage in

4

online gambling. Some of these credited accounts were based in the Southern District of New York. These transfers, executed through the ACH system, represented payments, often winnings from online gambling, from illegal gambling businesses to players located in the United States who engaged in online gambling.

11. During and after the period from January 2009 and May 2009, Goldwater Bank, N.A. received funds in an amount greater than the value of the Defendant Funds from Allied Wallet, Inc. as payment for processing the ACH transactions described in the previous two paragraphs of this Verified Complaint. These funds from Allied Wallet, Inc. were traceable to Goldwater Account-1 and, accordingly, (a) to funds involved in money laundering, (b) to the proceeds of the operation of an illegal gambling business and the illegal transmission of gambling information, and (c) to property used in the operation of an illegal gambling business. These funds are traceable to funds currently on deposit at Goldwater Bank, N.A. (the "Directly Forfeitable Properties")

12. Goldwater Bank, N.A. and the Plaintiff United States of America have agreed to treat the Defendant Funds as a substitute *res* for the Directly Forfeitable Properties and Goldwater Bank, N.A. has agreed not to dispute that the Defendant Funds are directly traceable to the previously alleged transfers from Allied Wallet, Inc. to Goldwater Bank, N.A.

**Allied Wallet Forfeiture**

13. On or about August 16, 2010, the United States filed a Verified Complaint, 10 Civ. 6169 (VM), seeking the forfeiture of $13,335,248.91 in funds traceable to Goldwater Account-1 that the Federal Bureau of Investigation seized from accounts controlled by Allied Wallet, Inc., Allied Systems, Inc., and the owner of these companies, Ahmad Khawaja. A copy

5

of that complaint is attached hereto as Exhibit A and incorporated herein by reference as if set out in full.

## IV. COUNT ONE

**Forfeiture Under Title 18, United States Code, § 981(a)(1)(A)**

14. The allegations set forth in paragraphs one through 13 of this Verified Complaint are repeated and re-alleged as if fully set forth herein.

15. Title 18, United States Code, § 981(a)(1)(A) subjects to forfeiture "[a]ny property real or personal involved in a transaction or attempted transaction in violation of section . . . 1956 . . . of this title, or any property traceable to such property."

16. Title 18, United States Code, Section 1956, commonly known as the "money laundering" statute, provides in subsection (a)(2) that "[w]hoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer . . . funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States–

(A) with the intent to promote the carrying on of specified unlawful activity; or

(B) knowing that the . . . funds involved in the . . . transmission or transfer represent the proceeds of some form of unlawful activity and knowing that such . . . transmission or transfer is designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity"

shall be guilty of a crime.

17. The term "specified unlawful activity" is defined in Title 18, United States Code, Section 1956(c)(7)(A) as "any act or activity constituting an offense listed in Section

1961(1) of this title." 18 U.S.C. § 1961(1) lists as an offense, "section 1955 (relating to the prohibition of illegal gambling businesses)."

18. Title 18, United States Code, Section 984 provides, in pertinent part, that

(a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution (as defined in section 20 of this title), or precious metals –

(A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

(B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

(2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

(b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

19. Because the Defendant *in rem* was involved in, or traceable to transactions involved in, transactions transferring funds to a place in the United States from or through a place

7

outside the United States with the intent to promote the carrying on of an illegal gambling business by individuals and entities who knew the transfers represented the proceeds of unlawful activity, to wit operating an illegal gambling business, and were done to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of operating an illegal gambling business, the Defendant *in rem* is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and 984.

## V. COUNT TWO

### Forfeiture Under Title 18, United States Code, § 981(a)(1)(C)

20. The allegations set forth in paragraphs one through 13 of this Verified Complaint are repeated and re-alleged as if fully set forth herein.

21. Under 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in Section 1956(c)(7) of [Title 18]), or a conspiracy to commit such offense," is subject to forfeiture to the United States.

22. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any offense under 18 U.S.C. § 1961(1). 18 U.S.C. § 1961(1) lists as offenses "section 1084 (relating to the transmission of gambling information)" and "section 1955 (relating to the prohibition of illegal gambling businesses)."

23. The Defendant *in rem* is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 984 because it constitutes or is derived from proceeds traceable to offenses constituting specified unlawful activity, to wit, the transmission of gambling information in

violation of 18 U.S.C. § 1084 and the operation of an illegal gambling business in violation of 18 U.S.C. § 1955.

## VI. COUNT THREE

### Forfeiture Under Title 18, United States Code, § 1955(d)

24. The allegations set forth in paragraphs one through 13 of this Verified Complaint are repeated and re-alleged as if fully set forth herein.

25. Under 18 U.S.C. § 1955(d) "[a]ny property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States." Section 1955(a) states that "[w]however conduct, finances, manages, supervises, directs, or owns all or part of an illegal gambling business" is guilty of a crime.

26. The Defendant *in rem* is subject to forfeiture pursuant to 18 U.S.C. § 1955(d) and 984 because it is traceable to property used to conduct an illegal gambling business.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant *in rem* and that all persons having an interest in the Defendant *in rem* be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant *in rem* to the United States of America for

disposition according to law and that this Court grant plaintiff which further relief as this Court may deem just and proper together with the costs and disbursements in this action.

Dated: New York, New York
      September 14, 2010

                    PREET BHARARA
                    United States Attorney for the
                    Southern District of New York
                    Attorney for the Plaintiff
                    United States of America

By: _____
        JEFFREY ALBERTS
        300 Quarropas Street, Third Floor
        White Plains, NY 10601
        (914) 993-1965

## VERIFICATION

STATE OF NEW YORK            )
COUNTY OF NEW YORK           )
SOUTHERN DISTRICT OF NEW YORK )

Rosemary Karaka, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation, and, as such, has responsibility for the within action, that she has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of her own knowledge, information, and belief.

The sources of the deponent's information and the grounds for her belief are official records and files of the United States Government.

Dated: New York, New York
       September 14, 2010

_____
Rosemary Karaka
Special Agent
Federal Bureau of Investigation

Sworn to before me this
14th day of September, 2010

_____
Notary Public

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires May 8, 2014